UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER J. REED,<br><br>    Plaintiff,<br><br>v.<br><br>E. RACKLIN, et al.,<br><br>    Defendants. | No. 2:17-cv-0799 WBS AC P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Before the court is defendant Racklin's motion for summary judgment, ECF No. 38, which has been fully briefed, ECF Nos. 39 (opposition), 40 (reply). For the reasons stated below, the undersigned recommends that the motion for summary judgment be granted.

I.     FACTUAL AND PROCEDURAL BACKGROUND

The complaint, ECF No. 1, alleges that in April 2016, while plaintiff was incarcerated at California State Prison – Solano ("CSP-Solano"), he was sexually harassed by Correctional Counselor Racklin. Specifically, plaintiff alleges that during a meeting regarding an upcoming classification committee hearing, Racklin said, "Do you think you could jack me off in the blink of an eye?" When plaintiff objected to the comment, Racklin responded, "I didn't mean to offend

1

you . . . I feel that all inmates shouldn't lose their sense of humor." In the aftermath of this encounter, seeing Racklin at a committee hearing cause plaintiff to have an anxiety attack and a nervous breakdown in front of prison staff. He was excused from the hearing and "left the program office in tears." ECF No. 1 at 8-9. Prison officials failed to adequately investigate the incident, in violation of the Prison Rape Elimination Act (PREA). Because of the encounter with Racklin, plaintiff experiences nightmares, troubling thoughts, headaches, and strong feelings of helplessness and anger. He has trouble adjusting to new environments and is uncomfortable during encounters with correctional staff due to a deep homophobia he has developed since the incident.

On screening, the undersigned identified a potentially cognizable Eighth Amendment claim against Racklin and ordered service on him. Plaintiff's claims against other officials – two correctional sergeants, an assistant warden, and the warden – were found insufficient to proceed. Those claims were predicated on alleged violations of the PREA; plaintiff did not allege that defendants other than Racklin directly participated in the harassment or other acts that might violate the Eighth Amendment. Because the PREA does not give rise to a private right of action, plaintiffs PREA claims were dismissed without prejudice and plaintiff was granted leave to amend. ECF No. 7. No amended complaint was ever filed. Plaintiff proceeded with service on Racklin only, ECF No. 10, and the other defendants were terminated.

In his motion for summary judgment, Racklin contends that (1) the question "Do you think you could jack me off in the blink of an eye?" even if made, does not constitute cruel and unusual punishment under the Eighth Amendment; (2) even if he did pose the question to plaintiff, plaintiff has no evidence that he did so knowing that it posed a substantial risk of serious harm to plaintiff; and (3) he is entitled to qualified immunity because there is no clearly established law which states that a single, sexually inappropriate comment by prison staff to an inmate that is unaccompanied by physical contact violates the Eighth Amendment. See ECF No. 38-1 at 4-9.

////

////

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of

affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv. Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank of Ariz., 391 U.S. at 289).

On January 28, 2019, defendants served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See ECF No. 38-5. See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (movant may provide notice) (en banc), cert. denied, 527 U.S. 1035 (1999).

4

III. DISPUTED AND UNDISPUTED FACTS

For the purposes of summary judgment, the following material facts are either undisputed as affirmatively stated by the parties, or they are undisputed as determined by the court.[1]

- Defendant Racklin was a correctional counselor at CSP-Solano at the time of the April 2016 incident;
- Plaintiff was housed at CSP-Solano from March 23, 2016, until May 3, 2016, when he was transferred to another prison;
- Racklin was assigned to be plaintiff's correctional counselor;
- In April 2016, plaintiff and Racklin met in Racklin's office in order to prepare plaintiff for a Unit Classification Committee ("UCC") meeting;
- Prior to the April 2016 meeting, the plaintiff and Racklin had never met each other;
- During the meeting, Racklin was seated behind his desk, and plaintiff was seated in a chair to the side of the desk;
- During the meeting, the door to Racklin's office was closed;
- During the meeting, Racklin asked plaintiff questions a counselor would ask an inmate prior to the UCC committee meeting.
- During the meeting, plaintiff also signed some papers.
- As Racklin interviewed plaintiff, he typed on his computer;
- Near the end of the interview, when Racklin's printer ran out of paper, Racklin jokingly asked plaintiff if he had stolen the paper;
- Defendant did not touch plaintiff during the meeting; and
- The meeting lasted no more than ten minutes.

The parties dispute whether Racklin, as he was loading paper into the printer, said "Do you think you could jack me off in the blink of an eye?"[2]

---

[1] See ECF No. 38-2 at 2-4 (defendant's undisputed material facts); ECF No. 38-4 at 2 (defendant's declaration); see also ECF No. 39 at 27-35, 66-73, 106-110 (plaintiff's declaration, undisputed facts, and deposition, respectively); ECF No. 1 at 4-10 (plaintiff's complaint).

[2] In addition to his own testimony, plaintiff provides documentation of numerous contemporaneous complaints and reports that he made regarding the incident. See ECF No. 39 at 30, 44, 45, 51, 59. Defendant denies making the statement.

5

IV. ANALYSIS

A. Relevant Law

1. Eighth Amendment

a. Generally

"The Eighth Amendment proscribes the infliction of cruel and unusual punishment on prisoners. Whether a particular event or condition in fact constitutes 'cruel and unusual punishment' is gauged against 'the evolving standards of decency that mark the progress of a maturing society.'" Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks and citation omitted).

"It is obduracy and wantonness. . . that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Id. Accordingly, "courts considering a prisoner's claim must ask: 1) if the officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Somers v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997) (citing Hudson, 503 U.S. at 8).

b. Verbal Harassment

Allegations of verbal harassment do not generally state a viable claim under section 1983. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). This is true even where the verbal harassment is of a sexual nature. Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (holding that "the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment."). However, a claim based on verbal harassment can succeed if the offending comments were "gross even for a prison setting and were calculated to and did cause [plaintiff]

psychological damage." Keenan v. Hall, 83 F.3d 1083, 1092 (1996); see also Oltarzewski, 830 F.2d at 139.

### 2. Qualified Immunity

Qualified immunity shields government actors from civil liability under 42 U.S.C. 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see generally Anderson v. Creighton, 483 U.S. 635, 638 (1987). To evaluate a claim of qualified immunity, this Court considers (1) whether "the facts alleged show the official's conduct violated a constitutional right" and (2) whether "the right was clearly established" when the conduct took place. Tarabochia v. Adkins, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009)). A right is clearly established if a reasonable public official would know that his or her specific conduct was unconstitutional. Cunningham v. Gates, 229 F.3d 1271, 1287 (9th Cir. 2000) (citing Creighton, 483 U.S. at 636-37).

### B. Discussion

Although the allegation at the heart of this case — that Racklin asked plaintiff "Do you think you could jack me off in the blink of an eye?" — is disputed by competent evidence in the form of conflicting testimony, this dispute will only defeat summary judgment if it is material. For the reasons now explained, the court finds that the dispute is not material because (1) the alleged statement does not rise to the level of an Eighth Amendment violation as a matter of law, and (2) defendant has identified a failure of proof on another essential element of the Eighth Amendment claim. Moreover, defendant is entitled to qualified immunity.

#### 1. The Question Does Not Rise to the Level of an Eighth Amendment Violation

The "jack me off in the blink of an eye" statement is the only sexually-charged comment at issue,[3] and it is undisputed that there was no touching. Unfortunately for plaintiff, the law is

---

[3] In opposition to summary judgment, plaintiff for the first time contends that Racklin made additional "inappropriate comments" to him. ECF No. 39 at 11. There are no such allegations in the complaint, however, and plaintiff testified at his deposition that the statement quoted above was the only comment Racklin made that plaintiff considered sexual harassment. See ECF No. 38-3, Exh. A (Pl's Dep. Vol I.) at 32:13-15; 44:9-15; 49:21-51:7; 108:2-13.

7

clear: verbal harassment, even if sexual in nature, does not without more violate the Constitution. See Oltarzewski, 830 F.2d at 139; see also Austin, 367 F.3d at 1171; cf. Schwenk, 204 F.3d at 1197 (sexual harassment that includes physical assault violates Eighth Amendment).

Plaintiff argues that Racklin's statement violated the Eighth Amendment because it was "gross even for a prison setting," Keenan, 83 F.3d at 1092, but the undersigned disagrees. Statements and actions similar to and worse than those alleged here have been found not extreme enough to violate the Eighth Amendment. See, e.g., Austin, 367 F.3d at 1171 (prison official exposing himself to plaintiff for thirty to forty seconds was not sufficiently serious to constitute Eighth Amendment violation); Somers, 109 F.3d at 615, 624 (prison officials' gawking, pointing, and joking during plaintiff's cavity searches and showers did not violate the Eighth Amendment; to find otherwise would "trivialize the objective component of the Eighth Amendment and render it absurd."); Keenan, 83 F.3d at 1092 (finding "disrespectful and assaultive comments" made by prison guards did not violate Eighth Amendment); see also Blueford v. Prunty, 108 F.3d 251, 254-55 (9th Cir. 1997) (in qualified immunity context, finding no clearly established right to be free from feigned karate chops towards inmate's body, including groin area). Although the statement at issue here was (if made) clearly inappropriate and offensive, it cannot be fairly characterized as "gross even for a prison setting."

Plaintiff contends that Racklin did not merely him ask a question, he made a statement of "solicitation." ECF No. 39 at 10. The undersigned is aware of no authority for the proposition that a statement rises to the level of an Eighth Amendment violation if it constitutes "solicitation." To the contrary, in Austin the Ninth Circuit addressed a case in which plaintiff proffered testimony that a correctional officer had said "come suck this white dick, boy," while exposing his penis. If that language, which might well be characterized as the solicitation of a sex act, did not violate the Eighth Amendment, then neither does the language at issue here.

Accordingly, plaintiff's Eighth Amendment claim fails as a matter of law. Just as in Austin, the defendant is entitled to summary judgment.

    2. There Is No Evidence that Defendant Racklin Had the Requisite State of Mind

Plaintiff argues that the disputed conduct violated the Eighth Amendment because it

8

caused him significant psychological harm, particularly in light of his underlying mental health issues. However, an Eighth Amendment claim based on harassment requires proof both that plaintiff suffered psychological damage and that defendant's actions were "calculated to" cause such damage. Keenan, 83 F.3d at 1092. The court need not evaluate the adequacy of petitioner's showing regarding injury, because defendant has identified an absence of proof as to the culpability of his state of mind.

There is no affirmative evidence that Racklin intended to cause harm, and the circumstances do not support such an inference. Plaintiff's own allegations about Racklin's "apology" ("I didn't mean to offend you. . . inmates shouldn't lose their sense of humor"[4]) would support a finding favorable to the defense that the statement, if made, was intended as a joke. While such a "joke" – or the couching of sexual harassment in language that permits it to be disingenuously dismissed as a joke – is by no means innocuous, neither does it support an inference that the comment was calculated to cause psychological damage.

Plaintiff implies that malicious intent can be inferred from the fact that Racklin directed his comment at a psychologically fragile inmate. However, the evidence does not support an inference that Racklin knew his statement was likely to cause harm. It is undisputed that plaintiff and Racklin had not met before their April 2016 meeting. Plaintiff has presented no evidence that Racklin reviewed plaintiff's medical records prior to their meeting, or that plaintiff's mental health was ever discussed between them. Plaintiff does assert in opposition to summary judgment that defendant Racklin "knew that [I] . . . was mentally disabled and had been recently released from suicide watch." See ECF No. 39 at 7, 83. However, he identifies no evidence in support of this allegation. And even if the basic inmate classification information before Racklin did indicate that plaintiff was a mental health client and had recently been suicidal, that would not support an inference that any inappropriate sexual comment was made with the calculated aim of causing psychological distress.

////

---

[4] ECF No. 1 at 6.

9

Because there is no evidence that Racklin knew how fragile plaintiff's mental state was, or that a single sexually harassing comment would cause plaintiff severe distress, no jury could find that he acted in a manner calculated to cause harm. Because Racklin has identified a complete failure of proof on this element of plaintiff's claim, he is entitled to summary judgment.

### 3. Defendant Is Entitled to Qualified Immunity

Finally, Racklin is entitled to qualified immunity because a reasonable public official in his position could not have predicted that making a single, sexually-charged statement – without more – would constitute a violation of plaintiff's constitutional rights. See generally Cunningham, 229 F.3d at 1287. At the time of the incident at issue, it was settled in the Ninth that directing vulgar language at an inmate does not violate the inmate's constitutional rights. Oltarzewski, 830 F.2d at 139 (so holding). The Court of Appeals had found that conduct even more egregious than that alleged here did not violate the Eighth Amendment. See Austin, 367 F.3d at 1169 (officer allegedly exposed genitals while making obscene comments). Because there was no clearly established constitutional right for inmates to be free from offensive comments of a sexual nature, defendant Racklin is immune from liability.

## V. OTHER DEFENDANTS AND CLAIMS

As previously noted, the complaint in this case was determined on screening to present a single, potentially cognizable claim: the Eighth Amendment sexual harassment claim against Racklin that has been addressed above. Plaintiff was given the opportunity to amend his claims against other defendants, which appeared to be based on the Prison Rape Elimination Act (PREA). ECF No. 7. Plaintiff did not file an amended complaint, and defendants Easterling, White, Arnold and Popvich were terminated on the docket. Their dismissal was never formally recommended to the district judge.

As noted in the 2017 screening order, the PREA does not provide a private cause of action. See Miller v. Brown, No. 1:12-CV-01589-LJO, 2014 U.S. Dist. LEXIS 15116, 2014 WL 496919, at *8 (E.D. Cal. Feb. 6, 2014), report and recommendation adopted, No. 1:12-CV-01589-LJO, 2014 U.S. Dist. LEXIS 26171, 2014 WL 806957 (E.D. Cal. Feb. 28, 2014); Porter v. Jennings, No. 1:10-cv-01811-AWI-DLB PC, 2012 U.S. Dist. LEXIS 58021, 2012 WL 1434986,

*1 (E.D. Cal. Apr. 25, 2012). Accordingly, plaintiff's allegations regarding the adequacy of the investigation under PREA (ECF No. 1 at 10) do not state a claim for relief. Moreover, to the extent that plaintiff intended to hold the warden and assistant warden liable for the actions of their subordinates based on their general supervisory responsibility, there is no *respondeat superior* liability under § 1983. See Taylor v List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Accordingly, the undersigned recommends that the district judge construe the screening order at ECF No. 7 as Findings and Recommendations for the dismissal of all other claims and defendants, and to adopt it as such.

VI. CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Defendant Racklin's motion for summary judgment, ECF No. 38, be GRANTED;

2. The screening order at ECF No. 7 be construed as Findings and Recommendations for the dismissal of all other defendants, and adopted; and

3. This case be CLOSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 30, 2019

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE